**IT IS ORDERED as set forth below:**

**Date: April 15, 2021**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: <br><br> STANLEY KAPPELL WATSON, <br><br> Debtor. | CASE NO. 18-69905-BEM <br><br> CHAPTER 7 |
| SHENEEKA BRADSHER and ZARINAH ALI, <br><br> Plaintiffs, <br><br> v. <br><br> STANLEY KAPPELL WATSON, <br><br> Defendant. | ADVERSARY PROCEEDING NO. <br> 19-5127-BEM |

## O R D E R

This adversary proceeding came before the Court for trial on March 18, 2021. Plaintiffs Sheneeka Bradsher and Zarinah Ali seek a determination that their debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as having resulted from willful and malicious injury. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(I).

During the trial, the Court heard testimony from Ms. Bradsher, Ms. Ali, and Defendant Stanley Watson, and admitted as evidence Plaintiffs' exhibits 1 through 6. Having considered the evidence and the applicable legal authorities, the Court finds in favor of Plaintiffs in part and Defendant in part. The Court enters its findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as follows:

**I. Findings of Fact**

Defendant filed a Chapter 7 bankruptcy petition on November 28, 2018 and received a discharge on March 15, 2019. Plaintiffs are prepetition judgment creditors of Defendant. Plaintiffs sued Defendant in the State Court of DeKalb County, Georgia, Civil Action File Number 13A47805-6, for slander, false imprisonment, and battery. [Doc. 38 ¶ 3a; Doc. 45 ¶ 7a]. On April 29, 2015, a jury entered a verdict for Plaintiffs against Defendant and awarded Ms. Bradsher compensatory damages of $75,000 and punitive damages of $5,000, awarded Ms. Ali compensatory damages of $25,000 and punitive damages of $5,000, awarded both Plaintiffs attorney fees of $39,000 and expenses of $1,500. [Pl. Ex. 5, 6].

The lawsuit arose out of an incident that occurred between the hours of late July 11, 2012 and early July 12, 2012 at the Tanqueray Lounge ("Tanqueray") in Decatur, Georgia. Ms. Bradsher was visiting Ms. Ali from out of town, and they went to Tanqueray. Ms. Bradsher sat at a table or the bar while Ms. Ali alternated between dancing and sitting with Ms. Bradsher.

Defendant was, at the time, a commissioner for DeKalb County, Georgia, and was also at Tanqueray. He was wearing a shirt that identified him as a county commissioner. Defendant had flown to Atlanta earlier that day from Tennessee, where he had been helping his mother with funeral arrangements for his sister. After arriving in Atlanta, Defendant went to dinner with a friend before going to Tanqueray alone.

2

At some point in the evening, Defendant bought Ms. Bradsher a drink or two, and the two engaged in small talk. Ms. Bradsher testified that during the conversation, Defendant propositioned her for sex, that she was offended and upset by the suggestion, and that she rejected him in insulting terms. Ms. Bradsher then rejoined Ms. Ali, and told Ms. Ali about the proposition. Defendant denies that he solicited Ms. Bradsher for sex.

Shortly thereafter, Defendant was unable to find his wallet. Although he had some cash in his pocket, it was not enough to pay for the drinks he had purchased for Ms. Bradsher, and he wanted to pay by credit card. He asked the two bartenders if they had seen his wallet, but they had not. Defendant then concluded that Ms. Bradsher must have taken his wallet because she was the only person who had been in proximity to him. Defendant would discover the following morning that he had left his wallet in his car. Before then, however, Defendant would repeatedly say "bitches stole my wallet" referring to Plaintiffs, both Plaintiffs' purses would be searched by police, Defendant would poke Ms. Ali on the forehead and tell her she was going to jail, and Ms. Bradsher would be handcuffed and placed in a police car.

Perez Patterson and Sergeant Oscar Parker, an off-duty police officer, were working security at Tanqueray the night of the incident, and both testified at the state court trial. [Pl. Ex. 1 at 40]. Additionally, DeKalb County Police Officers Lewis and Logan responded to Parker's request for assistance and testified at the state court trial. [Pl. Ex. 1 at 67, 86].[1] Patterson was patting down customers as they entered Tanqueray to ensure they were not carrying weapons or drugs. [Pl. Ex. 1 at 40]. Patterson checked Defendant when he entered the bar, and Defendant stated to Patterson that he did not get patted down because he was a county commissioner. [Pl. Ex. 1 at 41]. Patterson said he did not know and did not recognize Defendant, and that he felt his job

---

[1] All statements of Parker, Patterson, Lewis, and Logan are taken from their state court trial testimony, which has been admitted as Plaintiffs' Exhibit 1, and from Parker's incident report, which has been admitted as Plaintiffs' Exhibit 4.

3

was threatened by Defendant's comments. [P. Ex. 1 at 40-41, 47]. Defendant testified that Patterson did know him.

Defendant had parked his car such that it blocked the exit from the property, and Parker asked Defendant to move his vehicle. [Pl. Ex. 1 at 103]. Defendant did so, but queried Parker why Parker could not have moved it and said he was the only one "trying to get you-all raises." [Pl. Ex. 1 at 103]. Parker responded that he was not a valet.

Later that evening a waitress approached Patterson to say that a patron—Defendant—was complaining that his wallet had been stolen. [Pl. Ex. 1 at 42, 48-49]. Patterson relayed this to Parker, who was the lead police officer investigating the incident. [Pl. Ex. 1 at 105, 119]. Patterson and Parker spoke to Defendant, who pointed out Plaintiffs and repeatedly said, "these bitches got my wallet" and that he wanted them arrested. [Pl. Ex. 1 at 43, 51]. Defendant told Parker his wallet had been in his back pocket and that he took it out and put it on the bar to pay his tab, but that he did not see Ms. Bradsher take his wallet. [Pl. Ex. 1 at 105]. Defendant also threatened to have the bar shut down. [Pl. Ex. 1 at 43-44]. Ms. Bradsher was becoming irate and using profanity, and Parker then moved to speak to her and Ms. Ali. [Pl. Ex. 1 at 106]. Both Plaintiffs allowed Parker to look in their purses, which did not contain Defendant's wallet. [Pl. Ex. 1 at 106]. Ms. Ali testified that at some point during the initial investigation Defendant accused her of having his wallet. If Ms. Bradsher did not have the wallet, it must have been because she passed it to Ms. Ali. Ms. Ali denied the accusation. Defendant responded by poking her on the forehead, accusing her again, and telling her she was going to jail. Defendant denied poking Ms. Ali, and none of the officers' or Patterson's testimony during the state court trial mentioned seeing any physical contact between Defendant or either Plaintiff.

4

Patterson and Parker moved the parties outside to the parking lot and separated Defendant from Plaintiffs. Lewis assisted in separating the parties. [Pl. Ex. 1 at 68]. A number of Tanqueray patrons were also in the parking lot observing the incident. [Pl. Ex. 1 at 71, 99]. Defendant continued to insist, using the same offensive terms, that Plaintiffs had stolen his wallet. [Pl. Ex. 1 at 82]. Patterson, Lewis, Logan, and Parker described Defendant as appearing intoxicated and being belligerent or irate while insisting that Plaintiffs had his wallet and that he wanted them to be arrested. [Pl. Ex. 1 at 44-45, 70, 82, 87-88, 109]. During his testimony, Defendant denied being under the influence of alcohol. During the incident, Defendant stated that he would call various people, including the chief of police, and threatened that no one would be working at the bar anymore. [Pl. Ex. 1 at 82, 90, 107, 110]. Patterson made a video recording of Defendant at this time, which was admitted as Plaintiff's Exhibit 2. During the video, Defendant can be heard saying "Dale, Annette, and Chief O'Brian" are going to know what happened, the bar will lose its food certification, and the people working there will lose their gigs. [Pl. Ex. 2]. Defendant further says that it makes no sense, that he does not even have his driver's license because it was in his wallet, and that "they know they got my wallet." [Pl. Ex. 2].

At Parker's direction, Lewis handcuffed Ms. Bradsher and placed her in a police vehicle. [Pl. Ex. 1 at 68-69, 74]. Parker informed Ms. Bradsher that she was under arrest for disorderly conduct. [Pl. Ex. 1 at 107]. Ms. Bradsher was not free to leave at that time. [Pl. Ex. 1 at 81]. When Logan arrived on the scene, Ms. Bradsher was already in the police car. [Pl. Ex. 1 at 87]. Ms. Bradsher was irate and crying, and Lewis talked to her to try to calm her down. [Pl. Ex. 1 at 45, 69, 73]. Ms. Bradsher told Lewis that Defendant had solicited her for sex, and Ms. Ali told Logan the same. [Pl. Ex. 1 at 70, 77, 89, 98]. Lewis and Logan both stated that Ms. Bradsher appeared intoxicated. [Pl. Ex. 1 at 75, 89]. Logan stated that Defendant and Ms. Bradsher were

5

going back and forth regarding the wallet being stolen and that Defendant was loudly cursing. [Pl. Ex. 1 at 85]. During the state court trial, Ms. Bradsher testified that while she was in the police car, Defendant came to the window and said she stole his wallet and that she was frightened of what he might do to her. [Pl. Ex. 1 at 127-128]. She testified, "He really obviously thinks I have his wallet." [Pl. Ex. 1 at 127]. Logan heard Defendant say numerous times, "Bitch stole my wallet. She is going to have to give me my fucking wallet." [Pl. Ex. 1 at 90]. Defendant made similar statements to Parker, who was disturbed by the language and admonished him to behave like an elected official. [Pl. Ex. 1 at 108]. According to Logan, Defendant and Ms. Bradsher had to be separated to get the situation under control. [Pl. Ex. 1 at 89].

After Ms. Bradsher was detained, Defendant continued to insist on an arrest, which Logan took to mean that Defendant also wanted Ms. Ali arrested. [Pl. Ex. 1 at 97]. Logan, who spoke with Ms. Ali but did not speak with Ms. Bradsher, stated that during this time Ms. Ali remained calm, but she did not understand why Ms. Bradsher was detained and she was upset about the earlier solicitation of Ms. Bradsher. [Pl. Ex. 1 at 92, 98]. Parker agreed that Ms. Ali was calm and level-headed. [Pl. Ex. 1 at 110]. Ms. Ali testified that she had been told not to leave by the officers and that she was thus, not able to leave. [Pl. Ex. 1 at 165].

Parker solicited information from Defendant about his wallet and its contents for an incident report. [Pl. Ex. 1 at 108]. Parker then went to his car to get a business card for Defendant and retrieved a body camera to record further interactions with Defendant. [Pl. Ex. 1 at 108]. In the body camera footage, which was admitted as Plaintiff's Exhibit 3, Parker tells Defendant that Parker personally heard him accuse the bartender of taking his wallet and then accuse two women—presumably Plaintiffs—of taking his wallet. [Pl. Ex. 3]. Parker goes on to say Defendant put his wallet on the bar to pay for drinks and it turned up missing, but Defendant did not see

6

anyone take the wallet. [Pl. Ex. 3]. Defendant can be seen on the footage agreeing with Parker's statements. [Pl. Ex. 3].

Also on the body camera footage, Parker advised Defendant that he had been drinking and was in no condition to drive. [Pl. Ex. 3]. Defendant responded that he was going to call "Dale" to pick him up. [Pl. Ex. 3]. Parker accompanied Defendant to his car to make the phone call. [Pl. Ex. 3]. Nevertheless, Defendant drove his car away toward the end of the incident. [Pl. Ex. 1 at 71, 111]. The officers on the scene tried to follow him. [Pl. Ex. 1 at 71, 111]. Defendant subsequently returned to the parking lot. [Pl. Ex. 1 at 111]. A police lieutenant was notified and came to the bar. [Pl. Ex. 1 at 83, 111]. The lieutenant called a police major and handed the phone to Defendant, who had a conversation with the major. [Pl. Ex. 1 at 83, 111-112]. The lieutenant then told Parker to allow someone to take Defendant home. [Pl. Ex. 1 at 83, 112]. In Parker's incident report, he described these events as circumstances beyond his control that prevented him from arresting Defendant. [Pl. Ex. 1 at 112; Pl. Ex. 4 at 2]. Parker said he did not feel right arresting Ms. Bradsher given Defendant's behavior and therefore made the citation a warning. [Pl. Ex. 1 at 110]. Lewis released Ms. Bradsher after Parker indicated she would not be arrested. [Pl. Ex. 1 at 80].

Parker stated that if Defendant had not reported his wallet stolen and accused Plaintiffs, he would not have investigated Plaintiffs. [Pl. Ex. 1 at 115]. Parker further stated that Ms. Bradsher was not disorderly prior to the accusations. [Pl. Ex. 1 at 115]. Nevertheless, his decision to arrest her was based on her conduct and not the allegations of Defendant, which he attempted to explain to her at the time. [Pl. Ex. 1 at 117].

Ms. Bradsher testified that after being handcuffed by the police, she was afraid. And Defendant was walking back and forth along the police car saying that she had stolen his

7

wallet and was going to jail. Ms. Bradsher further testified that sometime after the incident, the news reported that she was accused of stealing Defendant's wallet and broadcast her photo with the report.

In summary, Defendant attempted to exert his influence as a county commissioner as soon as he arrived at Tanqueray and before he encountered Plaintiffs. He did so in his interaction with Patterson over the pat-down and in his interaction with Parker over moving his car as well as after he accused Plaintiffs of taking his wallet. Defendant purchased drinks for Ms. Bradsher and solicited her for sex, which she rejected. By this point, both Defendant and Ms. Bradsher appeared to be intoxicated. Defendant was unable to locate his wallet to pay for the drinks and accused Plaintiffs of stealing it, using profanity and misogynistic language to do so. The police became involved, and both Defendant and Ms. Brasher were belligerent and disorderly, all of which drew the attention of other patrons in the bar. Defendant continued to accuse Plaintiffs of stealing his wallet and wanted them arrested. Ms. Ali remained calm and did not appear intoxicated, but at some point during the incident, Defendant poked her on the forehead.

The parties were separated, and Ms. Bradsher was handcuffed, placed in a police car, and told she was under arrest. Defendant continued to accuse Plaintiffs of stealing his wallet and continued to exert his influence as a county commissioner. Defendant then drove away from the bar despite being instructed by police not to do so because of their belief that he was intoxicated. Defendant returned moments later. Although the police wanted to arrest Defendant for his disorderly behavior, they were directed by their superiors to allow Defendant to be taken home, apparently in response to phone conversations between Defendant and those superiors. Because the police did not think it fair to arrest Ms. Bradsher for disorderly conduct while allowing Defendant to leave, Ms. Bradsher was released. A jury subsequently found Defendant liable to

8

Plaintiffs pursuant to a complaint for assault, false imprisonment, and slander per se, and awarded compensatory damages, punitive damages, and attorney fees. The jury verdict did not specify which claim or claims were the basis for awarding damages.

## II. Conclusions of Law

Plaintiffs seek a determination that their debt is nondischargeable under 11 U.S.C. § 523(a)(6), which provides that a "discharge under section 727 … of this title does not discharge an individual debtor from any debt-- … (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The burden is on Plaintiffs to prove their case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659 (1991). The provisions of § 523(a) are construed liberally in favor of the debtor to carry out the bankruptcy policy of providing a fresh start to the honest but unfortunate debtor. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994).

To prevail in this proceeding, Plaintiffs must demonstrate that their debt arose from an injury that was both willful and malicious. To establish willfulness, Plaintiffs must show that the injury itself was deliberate, intentional, or substantially certain to result and not just that that the act leading to injury was deliberate. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998); *Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014). In other words, Defendant must have "intended 'the consequences of an act,' not simply 'the act itself.'" 523 U.S. at 61-62, 118 S. Ct. at 977. Neither recklessness nor negligence are sufficient to establish willfulness. *Id.* at 64, 118 S. Ct. at 978. To establish malice, Plaintiffs must show that Defendant's actions were "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164

9

(11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)). "[A] showing of specific intent to harm another is not necessary." *Ikner*, 883 F.2d at 991.

Here, Plaintiffs have shown that they were awarded a judgment in state court arising out of their claims for slander, false imprisonment, and battery. This is sufficient to establish that their debt arises from an injury to themselves. *See, e.g., Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012).

Plaintiffs previously asserted in a motion for summary judgment that collateral estoppel based on the state court judgment compelled a finding that the injury was willful and malicious. [Doc. 14]. The Court denied the motion on the ground that Plaintiffs failed to establish that all the claims in the state court case required the jury to find both willfulness and malice[2] and, indeed, none of the claims required both findings. [Doc. 22]. The Court now considers whether the evidence produced during the trial in this proceeding shows by a preponderance of the evidence that Defendant acted willfully and maliciously.

After initially reporting his wallet stolen and after involving Parker, Defendant repeatedly, and in the presence of police and patrons of Tanqueray, called Plaintiffs "bitches," said they stole his wallet, and said he wanted them jailed. Defendant also repeatedly made comments suggesting that he would use his connections as a county commissioner to harm the Tanqueray and its employees, including those employed for security, if they did not recover his wallet. Defendant's behavior continued even after Parker had looked in each of the women's purses without finding the missing wallet. After Parker confirmed with Defendant that he did not see

---

[2] Because the jury's verdict did not indicate which claim or claims were the basis for its award of damages, the Court concluded summary judgment based on collateral estoppel would not be appropriate if any one of the claims failed to meet the willful and malicious standard. [Doc. 22 at 7].

10

anyone take his wallet, Defendant left the parking lot for a short period and then went back into Tanqueray.

The Court finds these facts are sufficient to establish willfulness with respect to the conduct that is relevant to claims of slander and false imprisonment. Defendant accused Plaintiffs of theft, reported his accusations to the authorities with the understanding that Plaintiffs would be investigated and possibly jailed for the theft. Indeed, he expressly stated that they would be jailed. Additionally, Defendant attempted to use his influence as a public official to propel the investigation of Plaintiffs. Even though Plaintiffs were not arrested for theft, Defendant's own statements show he was aware that his accusation would result, at a minimum, in an investigation of Plaintiffs by police.

The issue of whether Defendant's actions were also malicious is a closer question. Defendant's accusations that Plaintiffs stole his wallet were false. However, based on the testimony in this proceeding and in the state court case, and based on the video evidence, the Court finds that Defendant genuinely believed Plaintiffs had taken his wallet. The Court notes that Defendant did not initially accuse Plaintiffs, but first asked whether the bartender had taken his wallet. Only after the bartender said no did Defendant accuse Plaintiffs and only then because Ms. Bradsher had been the only other person who had been close to him in the bar. Even Ms. Bradsher thought Defendant believed his accusations. "Anyone who genuinely believes that he or she has been the victim of a serious crime has a right, if not an obligation, to report it." *Qui v. Zhou (In re Zhou)*, 331 B.R. 274, 277 (Bankr. E.D. Mich. 2005) (finding no malice for purposes of § 523(a)(6) when schizophrenic debtor who made false police reports genuinely believed her accusations to be true even though plaintiff suffered damage to his reputation and emotional distress). Therefore, reporting a crime cannot be said to be wrongful, excessive, or without just cause, even if based on

11

a mistaken belief. However, reporting of an alleged crime did not require Defendant to continue claiming that Plaintiffs had stolen his wallet and that they were going to go to jail. After reporting that his wallet was missing and the officers began investigating, Defendant's civic duty was done and his continued accusations using derogatory and profane language became wrongful and without just cause and excessive. Thus, Plaintiffs have established that their claims of false imprisonment and slander constitute willful and malicious injuries.

With respect to conduct relevant to the battery claim--poking Ms. Ali in the forehead—the Court concludes that this injury was malicious but not willful. Ms. Ali testified that Defendant poked her in the forehead as she was standing by the entrance to the bar at the time Ms. Bradsher was responding to Defendant's accusation and the police were trying to get the situation under control. In consideration of all the evidence the Court concludes that Defendant, in accusing Plaintiffs and stating they were going to go to jail, also pointed at Mr. Ali and in so doing poked her in the forehead. The first question is whether Defendant's action was certain or substantially certain to result in a touching of Ms. Ali. The Court concludes that Defendant was not certain or substantially certain to make contact with Ms. Ali given that Defendant was intoxicated and had been seeking to intimidate various individuals since arriving at Tanqueray, but he had been doing so verbally and had not engaged physically with any other persons present at the bar. More likely than not, the poking was the accidental result of Defendant pointing at Ms. Ali. On the other hand, Defendant's action of poking Ms. Ali in the forehead is malicious as it was wrongful, without just cause, and excessive because reporting of a suspected crime does not require pointing at the purported suspect once the police have been involved and begun talking to that individual. As a result, Plaintiffs have not established that the battery claim was a willful and malicious injury.

12

As previously noted, the damages awarded to Plaintiffs were not allocated by claim. Here, the Court has concluded that all claims except for battery are non-dischargeable. Thus, this Court must seek to determine the amount of damage reasonably attributable to the battery claim. No evidence of damages suffered by Plaintiffs was offered in this Court. In the state court, Ms. Ali testified as to problems sleeping, of weight gain, of fear of leaving her home or staying in her home, of a job loss that occurred because she drove Ms. Bradsher and her children back to Virginia because Ms. Bradsher did not receive her driver's license back from Parker, and of feelings of violation because she felt that she and Ms. Brasher were being targeted by Defendant and the police. Certainly, the alleged battery could have resulted in some portion of her fear of leaving her home or staying in her home. However, the tenor of Ms. Ali's testimony at the state court trial was of intimidation because the police were arresting Ms. Bradsher when she did not take Defendant's wallet and because of the officers' seeming deference to Defendant. That being the case, this Court will allocate $2,500 of Ms. Ali's $25,000 compensatory damage award to the battery claim.

For the foregoing reasons, the Court finds that Plaintiffs failed to prove by a preponderance of the evidence that $2,500 of the debt owed to Ms. Ali on account of the battery claim is nondischargeable. Plaintiffs did prove that the compensatory damages and punitive damages awarded Ms. Bradsher in the amount of $75,000 and $5,000 respectively, are non-dischargeable, the compensatory damages of $22,500 and punitive damages of $5,000 awarded to Ms. Ali are non-dischargeable, and the attorney fees of $39,000 and expenses of $1,500 are nondischargeable. The Court will enter a separate judgment accordingly.

**END OF ORDER**

**Distribution List**

Maurice J. Bernard, III
3717 Chamblee Dunwoody Road
Atlanta, GA 30341

Stanley Kappell Watson
3821 Eagle Woods Circle
Lithonia, GA 30038

Elizabeth Ashlynn Falconer
Nelson Mullins Riley & Scarborough LLP
Suite 1700
201 17th St NW
Atlanta, GA 30363

Gregory M. Taube
Nelson Mullins Riley & Scarborough, LLP
Suite 1700
201 17th Street, NW
Atlanta, GA 30363

Megan C. Walker
Nelson Mullins Riley & Scarborough LLP
Suite 1700
201 17th Street NW
Atlanta, GA 30363